392 So.2d 301 (1980)
R.M.P., a Child, Petitioner,
v.
Carlton JONES, Superintendent, Duval Regional Detention Center, Respondent.
No. ZZ-9.
District Court of Appeal of Florida, First District.
December 23, 1980.
Rehearing Denied January 27, 1981.
*302 William P. White, Chief Asst. Public Defender, and Claudia Wright, Asst. Public Defender, for petitioner.
No appearance for respondent.
PER CURIAM.
Rose, a 15-year old girl, petitions this court for a writ of habeas corpus, seeking release from the remainder of a 40-day sentence she is serving for contempt of court. Upon reviewing the circuit court orders of Judge Safer and based upon the legal analysis contained therein and incorporated below, we decline to issue the writ.
The record indicates, and petitioner does not contest, that petitioner specifically violated the court's orders, which violations resulted in the contempt finding.[1]
*303 Petitioner asserts the adjudications of guilt and sentences entered are illegal because (1) the court has no authority to place conditions upon a child who is subject to a dependency action and (2) there is no provision under Florida law for the placement of a child judged guilty of contempt in a secure detention facility, thus the child cannot be placed within the custody of HRS.
Following Judge Safer's finding of guilt and imposition of sentence, petitioner submitted a motion in the trial court to vacate the sentence. In denying petitioner's motion to vacate, Judge Safer explained in some detail the basis for his decision. We extract those portions relevant to the instant petition:
* * * * * *

Child's Contentions
1. That the powers of disposition as set forth in Section 39.41(1), Florida Statutes, do not authorize the Court lawfully to place conditions upon this dependent child. Therefore, the conditions being unlawfully imposed could not form a basis for holding the child in contempt upon her failure to abide by said conditions.
2. Even assuming that there were a proper contempt proceeding and adjudication (which child argues there was not), the sentence of the child to a secure detention facility is unlawful as such placement is not authorized by any section of Chapter 39.

HRS Contentions
Although no formal pleading was filed in this case by HRS, the Court invited HRS to be present at all of the contempt hearings and advised its counsel of the hearing on motion to vacate and invited such counsel to advise the Court of the HRS position on such sentence.
In response, HRS offered testimony which will be summarized hereafter.
HRS contends that the Legislature has provided for secure detention facilities only for the temporary care of children pending delinquency adjudication or court disposition (Senate Bill 409, effective July 1, 1980, amending § 39.01(31), F.S.).
Therefore, HRS concludes the Court cannot impose a burden upon HRS which the Legislature has not given HRS power to handle. Specifically, in this case, the Court has ordered a child, who is not a delinquent child, to be incarcerated in a secure detention facility.
* * * * * *

Discussion of the Issues
As mentioned in the Motion to Vacate Judgment, the issues named are matters of first impression in the State of Florida and are of a unique and complex nature. These issues are important because they affect the conduct of the juvenile court system. * * *
[A summary of the actions leading up to the trial court's order finding petitioner guilty of contempt follows:]
1. By order entered on November 4, 1980, the child's dependency was reaffirmed, she was placed in the temporary care, custody and control of her mother subject to HRS' supervision and the Court imposed eight conditions relating to the child's behavior. (Although the case history of this particular child would be interesting to relate, it is not material to the legal issues to be determined in this case.)
2. The Court followed Rule 8.820 [8.280], Fla.R.Juv.P., which deals with Indirect Criminal Contempt.
*304 3. The child was adjudicated guilty of two separate indirect contempts in that she violated two separate conditions of the Court's order entered November 4, 1980.
4. The child was not adjudicated a delinquent and it is my understanding that such an adjudication is prohibited by the case of J.M.J.,[2] decided by Florida District Court of Appeal on October 22, 1980.
5. The child's sentence involved placement with HRS to be incarcerated in secure detention for 20 days on each contempt, to be served consecutive. She was placed with HRS as a person guilty of indirect criminal contempt of court, not as a delinquent child nor as a dependent child.

I. The first issue is what power does a Juvenile Court Judge have under Chapter 39, as amended by Senate Bill 409, to impose conditions on a dependent child?
Section 39.41(1)(a) states:
(1) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child shall have the power, by order, to: (a) place the child under the protective supervision of an authorized agent of a department, either in the child's own home or, the prospective custodian being willing, in the home of a relative of the child or in some other suitable place under such reasonable conditions as the child may direct. ____" (emphasis supplied)
Child contends the underlined portion means that the conditions are solely to be imposed in connection with the placement of the person with whom the child is to be placed.
I do not read the underlined language as being so restricted. I must take into consideration the mandate of the Legislature in Section 39.001(3), that "This chapter be liberally interpreted and construed in conformity with its declared purpose." One of the declared purposes as set forth in Section 39.001(2)(b) is to assure that children who appear before the Court under this Chapter, be they delinquent or dependent, obtain the care, guidance and control-which will best serve the moral, emotional, mental and physical welfare of the child and the best interest of the State." It is important to note that the "best interest of the State" must be taken into account by the Judge.
* * * * * *
Under child's contention, I had no right under Chapter 39 to discuss placement with the child, giving the child an alternative upon her agreeing to certain conditions. Under child's contention, the Court's power of disposition was to discuss with the mother conditions to be imposed upon the mother if she wanted to have the child returned.
To presume that the child's contention is the legislative intent, would be to undermine the entire concept of the Judge having the ability to analyze the child's problem, to discuss the problem with the child, to obtain a commitment from the child, all in the process of making a reasonable determination as to the proper disposition beneficial to the child and the State.
Therefore, I must reject the basic contention of the State that a Juvenile Court Judge cannot reasonably impose conditions on a dependent child.

II. The second issue is that assuming that the Juvenile Court Judge can impose a condition on a dependent and failure of the child to abide by the condition does not constitute any violation of the law, can the child be held in indirect criminal contempt?
Child relies on the case of In re Ronald S., [69 Cal. App.3d 866,] 138 Cal. Rptr. 387 (Court of Appeal, 4th District, 1977). The opinion of Justice Gardner sets forth forth-rightly the problems faced by the California Juvenile Court system upon its juvenile code, which are very similar to the situation in this State if it is held that the Juvenile Court Judge has no inherent power to enforce his orders. It is a jewel and should be required reading by all legislators. However, it is not determinative of the issues in this case.
In Ronald S., a runaway child was sent to ... a crisis center and was ordered by the *305 court to stay there. He left the day he arrived. Thereupon, a petition was filed alleging a violation of the code. I have not researched the California code, but I assume such petition alleged a contempt similar to the contempt mentioned in § 39.01(8), F.S., based upon a portion of the opinion identified as Bootstrapping, page 390. This was contrary to California Statute per 1976 amendment, page 391. Child was found guilty and detained in a secure facility.
Thus, it appears that Ronald S. involved in the same situation that was addressed by the First DCA in J.M.J. when it held "appellant cannot be adjudicated a delinquent for committing the contempt alleged here." Nowhere in Ronald S. is there a comment on the Judge's inherent power to hold a child in contempt. The California Judge brought a delinquent petition based upon statute. He did not rely on his inherent power.
The Juvenile Court Judge in the California case is accused then of doing by indirection that which cannot be done directly. That is true because he used a delinquency procedure to make a delinquent out of a dependent that cannot be done.
By using my inherent power of the Court as I have done, I have not made a delinquent out of the child. I have not done anything by indirection that I couldn't do directly, namely, enforce my order.
My authority to enforce my own order is set forth in Section 38.22, F.S., entitled Power to Punish Contempts, to-wit:
"Every court may punish contempts against it whether such contempts be direct, indirect or constructive, and in any such proceedings, the court shall proceed to hear and determine all questions of law and fact."
It is not derived from Chapter 39. As established in the cases which are cited in footnote number 4 to J.M.J. of November 25, 1980, children can be punished for contempt. In one of the cases, a child broke a Court's order concerning activity on a college campus. Except for the Court's order what the child did was not a violation of law. I see no difference between that Court's order and my order for Rose "not to associate with Michelle".

III. The third issue is where should the child be placed for punishment?
From the testimony presented by HRS, the Duval Regional Detention Center is the secure detention facility serving six counties in this area. It has five modules, all of which currently have some occupancy. However, overall occupancy is not at capacity at the present time, the population being 59 below capacity. To house a child who has been held in contempt would require the placement of the child in an isolation cell (which I would consider cruel and inhuman punishment) or in a separate module, requiring removal of all delinquent children therefrom. A complete program would have to be administered for the contemnor child including eating, play, shower and other phases of living there.
All of this assumes that she is a dependent and that she could not have any contact with a delinquent [as under Section 39.402(4), prior Florida Statute].
HRS has a shelter facility for dependent girls, but it has no locks on the doors and windows. The staff is instructed not to physically restrain a child who wants to leave. Obviously, the placement in such a shelter would not be the punishment desired by the Court.
I am not unmindful of the administrative problems created for the superintendent of the Duval Regional Detention Center when a Judge sends him a child who does not fit into the delinquent category. However, the judicial system cannot operate effectively if it must conform its punishment to available facilities and the regulations governing them.
I classify imprisonment into two categories-jail for adults; detention for juveniles. Since judicial process requires Rose to be imprisoned for contempt, it must be in a detention facility.
Further, I believe HRS is in error in considering Rose as a dependent child. She has been held in indirect criminal contempt.
*306 I digress to propose another question. Assuming a Judge holds a child in civil contempt for failure to testify before a grand jury and the Judge orders the child imprisoned subject to the child's purging himself by agreeing to testify. (This was the situation in several of the cases set forth in footnote number 4 of the J.M.J. opinion.) Where would the child be placed? Would HRS refuse to accept the child because the child is not a delinquent?
The Legislature has determined that HRS is the proper authority to handle juveniles.
Therefore HRS must be prepared to handle unusual situations and is not able to use the argument, "The Legislature didn't tell us we had to do that."
* * * * * *

Conclusions
1. A Juvenile Court Judge has the right to impose reasonable conditions on the behavior of the dependent child, consistent with the welfare of the child and the interest of the State.
2. A Juvenile Court Judge has the inherent power to hold a child in contempt for failure to abide by the Court's order.
3. A child who has been adjudged guilty of contempt can be placed in secure detention by HRS.
* * * * * *
After reviewing the child's petition for writ of habeas corpus and Judge Safer's discussion of the issues above, we find we are in agreement with Judge Safer's conclusions. To find otherwise would restrict the powers of juvenile judges in a manner not intended by the Legislature. Accordingly, the petition for writ of habeas corpus is DENIED.
MILLS, C.J., and BOOTH and LARRY G. SMITH, JJ., concur.
NOTES
[1] Judge Safer's Order of November 4, 1980, reflects in relevant part the following:

On October 13, 1980, the child appeared at detention charged with being a runaway. At the hearing, Rose told the court she had been with one or more older gentlemen, had smoked marijuana and had consumed alcohol. She would not promise not to run away.
* * * * * *
Today, Rose appeared for a review of detention. Her mother told the court she would like Rose to return home if she will behave. The counselor had mixed feelings, but thought it would be all right if Rose behaved.
* * * * * *
I discussed with Rose the conditions which would be imposed upon her and gave her the choice of returning to her mother or going to a foster home. Rose chose her mother.
* * * * * *
I explained to Rose that any breach of the conditions would lead to a contempt proceeding, which might end up with her being charged as a delinquent. She said she understood and that she could live under all the conditions.
ORDERED AND ADJUDGED that the dependency of child is reaffirmed and the child is placed in the temporary care, custody and control of her mother.
FURTHER ORDERED AND ADJUDGED that:
* * * * * *
2. The child shall reside with mother ... and shall not run away.
* * * * * *
6. The child shall not associate with or have any contact with Michelle, a neighbor.
* * * * * *
The following week, Rose was again in trouble. Judge Safer ordered the child's counsel to show cause why Rose should not be charged and convicted of contempt. Following a plea of not guilty and hearings on the matter, judgment of guilt was entered. Judge Safer's "Judgment of Guilt of Indirect Criminal Contempt and Sentence", continues the story:
* * * * * *
[At the hearing held November 19, 1980, the child's mother] ... testified for the State under oath in essence:
(a) She received a copy of the Court's order (11/4/80) on the Thursday after it was entered. She discussed it with Rose by reading it to her and telling her she had to obey it.
(b) Michelle ... is the neighbor whom Rose was prohibited by the order from associating with. The witness saw Rose with Michelle every day that week. Witness told Rose not to associate with Michelle, but Rose responded "Michelle is my friend."
* * * * * *
In reaching the guilty decision the court finds that it has been proven beyond any reasonable doubt that:
(1) The order of November 4, 1980, contained two specific conditions, namely:
2. The child reside with mother ... and shall not run away.
6. The child shall not associate with or have any contact with Michelle, a neighbor.
(2) Child disobeyed condition number two in that on Saturday, November 8, 1980, child did run away from the home of the mother without permission and mother did not see the child again until the child was picked up by police on November 9, 1980.
(3) Child disobeyed condition number six in that child associated with Michelle each day following the entry of the order and was with Michelle in the police car on November 9, 1980. Judge Safer noted there was no contention that the conditions had not been violated.
[2] 389 So.2d 1208 (1980, Fla. 1st DCA).