88 Ill.2d 36 (1981)
430 N.E.2d 1096
In re G.B., a Minor, Appellee (The People of the State of Illinois, Appellant).
No. 54098.
Supreme Court of Illinois.
Opinion filed December 18, 1981.
*39 Tyrone C. Fahner, Attorney General, of Springfield, and Thomas J. Difanis, State's Attorney, of Urbana (Herbert Lee Caplan, Melbourne A. Noel, Jr., Jack Donatelli and Thomas C. Crooks, Assistant Attorneys General, of Chicago, and Robert J. Biderman, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.
Daniel D. Yuhas, Deputy Defender, and Charles M. Schiedel, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.
Affirmed in part and reversed in part, and remanded.
JUSTICE RYAN delivered the opinion of the court:
This case arose out of proceedings against G.B., a minor, upon a petition for an order to show cause why he should not be held in contempt of court for failure to obey an order to attend school. On December 1, 1978, a petition was filed pursuant to the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701-1 et seq.) alleging that G.B. was an habitually truant minor otherwise in need of supervision and that it would be in the best interest of the minor and the public that he be adjudged a ward of the court. On February 7, 1979, G.B. admitted the allegations of the petition and agreed to a continuance under supervision conditioned upon an order that he attend school. The minor did not attend school as directed and was found in contempt of court. As a consequence of that finding of contempt, G.B. was placed on "probation" for one year beginning on May 31, 1979. He was ordered to serve 19 days at the Champaign County Youth Detention Center and pay court costs of $114.10, and was again ordered to attend school. No appeal was taken from that order. The period of detention was served; however, no payment of the amount assessed as costs was made.
On October 3, 1979, a second contempt petition was filed, alleging the continued truancy of the minor and *40 seeking a second order to show cause why G.B. should not once again be held in contempt. On December 12, 1979, the minor stipulated to the allegations of this second petition and was again held to be in contempt of court. A petition to vacate the stipulation was dismissed, and on January 21, 1980, the court again placed the minor on probation for a period of one year, ordered that he be held at the detention center for 60 days, and again ordered G.B. to pay court costs of $114.10. The trial court allowed the minor to post bond pending appeal of this second adjudication of contempt.
The appellate court held that the contempt finding was for criminal contempt and that while a court possesses inherent power to enforce its orders through contempt proceedings, which may include imposing a sentence of probation, the focus of criminal contempt is punishment, not rehabilitation. Consequently, the appellate court held that the trial court abused its discretion in placing the minor on probation in this case. Further, the appellate court held that only those costs attributable to the contempt proceedings could properly be assessed against the minor. The order placing G.B. on probation was reversed and the cause remanded for further proceedings, including a determination of costs properly chargeable to the minor. (88 Ill. App.3d 64, 69.) We granted the State's petition for leave to appeal (73 Ill.2d R. 315).
The minor argues in this appeal that since he was alleged to be a minor otherwise in need of supervision under the Act (Ill. Rev. Stat. 1977, ch. 37, par. 702-3) and, consequently, not subject to a dispositional order of probation (see Ill. Rev. Stat. 1977, ch. 37, par. 705-2(1)(b)), the court lacked the authority to accomplish indirectly, by way of contempt, that which it could not do directly under the Act.
We are not persuaded by this argument. G.B. was not placed on probation pursuant to a dispositional order under *41 section 5-2(1)(b) (Ill. Rev. Stat. 1977, ch. 37, par. 705-2(1)(b)). On February 7, 1979, the cause came on for hearing on the petition filed December 1, 1978, which alleged that G.B. was a minor otherwise in need of supervision. Pursuant to section 4-7 (Ill. Rev. Stat. 1977, ch. 37, par. 704-7), the cause was continued by agreement upon the specific condition that he attend school. The contempt proceedings initiated March 5, 1979, were filed because of a violation of this interim order, the validity of which has not been challenged by the parties to this appeal. This, therefore, is not a case governed by the Juvenile Court Act. Rather, the propriety of placing this minor on probation depends upon the court's power to impose punishment for contempt for the violation of its order.
Courts have the inherent power to enforce their orders by way of contempt. (People v. Javaras (1972), 51 Ill.2d 296, 299; People v. Bloom (1966), 35 Ill.2d 255, 258, rev'd on other grounds (1968), 391 U.S. 194, 20 L.Ed.2d 522, 88 S.Ct. 1477; People v. Loughran (1954), 2 Ill.2d 258, 262; People ex rel. Rusch v. Enger (1936), 364 Ill. 464, 466.) The power to punish for contempt does not depend on constitutional or legislative grant. Because the power to enforce court orders through contempt proceedings inheres in the judicial branch of the government, the legislature may not restrict its use. In re Baker (1978), 71 Ill.2d 480, 484; People ex rel. Rusch v. White (1929), 334 Ill. 465.
Prior to January 1, 1974, a minor who violated an order of the court could be dealt with as a delinquent; however, after that date, a minor who violated a court order issued under the Juvenile Court Act could only be treated as a minor otherwise in need of supervision. (Ill. Rev. Stat. 1977, ch. 37, pars. 702-2(b), 702-3(d).) Prior to January 1, 1974, a minor who violated a lawful court order as a delinquent could be put on probation under section 5-2(1)(a) of the Act (Ill. Rev. Stat. 1973, ch. 37, par. 705-2(1)(a)). After January 1, 1974, a minor who violated a lawful order of the *42 court as a minor otherwise in need of supervision could not be placed on probation under the Act, since probation, as such, is not one of the authorized dispositions for such minors under section 5-2(1)(b) of the Act (Ill. Rev. Stat. 1977, ch. 37, par. 705-2(1)(b)). In In re Baker this court held that the provisions of the Act did not deprive the court of its authority to enforce its orders by use of its contempt power. The court, in that case, discussed the amendments effective January 1, 1974, and stated:
"It is equally clear that the amendments did nothing to deprive the circuit courts of the use of their contempt powers to enforce supervision orders." In re Baker (1978), 71 Ill.2d 480, 484.
We also find In re Baker helpful in deciding whether a sentence of probation may be appropriately imposed as punishment upon one found to be in contempt of court for violation of a lawful order. In that case the court held the minor in contempt for violating the court's order of supervision adjudging her a delinquent and placed her on probation. The minor contended that the same result  placing her on probation with the Department of Children and Family Services  could have been accomplished by proceeding under the Act instead of using the contempt power of the court. This court stated:
"Since the contempt power exists and there is a factual basis for that holding, the order cannot be said to be erroneous simply because an alternative route to the same objective was available. The trial court made a specific finding that the alternative remedy was `without sufficient deterrent effect,' and respondent has presented nothing which convinces us of any impropriety in that finding." (In re Baker (1978), 71 Ill.2d 480, 485.)
Thus, finding a minor in contempt and placing the minor on probation as punishment for contempt have been approved by this court as an alternate procedure to those provided for in the Act in dealing with minors who contumaciously *43 violate lawful court orders. However, in In re Baker the trial court, because of the contempt finding, adjudicated the minor a delinquent. Following the amendment effective January 1, 1974, the definition of "delinquent," as found in section 2-2 of the Act (Ill. Rev. Stat. 1977, ch. 37, par. 702-2), includes only those who violate statutory authority. Therefore, this court held that the trial court in In re Baker could not use a contempt finding for violating a court order as a basis of an adjudication of delinquency under the Act. This court, however, affirmed the trial court insofar as the contempt order and the order placing the minor on probation were concerned, but reversed the adjudication of delinquency. Thus, in In re Baker the use of the contempt power and the imposition of the sentence of probation were approved as an appropriate disposition of a minor who violated the orders of the court issued pursuant to the Juvenile Court Act.
The minor argues in this case that probation is not appropriate because the violation constituted criminal contempt, which, he contends, should provoke an order imposing punishment upon the contemnor. It is argued that the purpose of probation is rehabilitation and not punishment. Therefore the minor contends a sentence of probation should not be imposed for criminal contempt. We do not agree with this reasoning. Under the Unified Code of Corrections, probation is provided as an authorized sentence for a criminal offense. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005-5-3, 1005-6-1.) We see no reason why it should not also be an authorized penalty imposed upon one found guilty of criminal contempt. Our constitution provides:
"All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, sec. 11.)
This constitutional direction is not limited to penalties for *44 violations of criminal law, but applies to all penalties, which would include those imposed for criminal contempt. We do not agree that the only punishment authorized for criminal contempt is a fine or incarceration. Although probation may be intended as a reforming discipline and as a means of restoring offenders to society, affording them another opportunity through clemency (see 15 Ill. L. & Prac. Criminal Law § 818 (1968)), it is, nonetheless, a form of punishment. Punishment is not necessarily imposed for retribution purposes only, but in itself may be rehabilitative in that its imposition will have a deterrent effect upon future misconduct of the recipient, thereby discouraging future violations of the law or orders of the court. Thus, it is appropriate to impose a sentence of probation upon one found guilty of criminal contempt, as well as upon one sentenced for a violation of the criminal code. If the court, the dignity of which has been offended through a violation of its orders, feels that a mild rehabilitative form of punishment available through a sentence of probation is appropriate, both to punish and to discourage the offender from offending the dignity of the court in the future, such a determination should not be reversed unless it constitutes an abuse of judicial discretion. This holding is in accord with the few decisions on the subject from other jurisdictions. See Evans v. Unruh (1961), 79 S.D. 53, 107 N.W.2d 917; Lathrop v. Lathrop (1959), 57 N.J. Super. 532, 155 A.2d 106.
The next question presented by the minor is whether the court, as punishment for contempt for the violation of the probation order, may impose incarceration when, under the Juvenile Court Act, the court is not authorized to incarcerate a minor for violating an order of the court (Ill. Rev. Stat. 1977, ch. 37, par. 705-2(1)(b)). The minor's argument here does not appear consistent with his previous argument to the effect that probation is not an appropriate sentence for violation of a contempt order because, as the minor argued, probation is rehabilitative and not punitive, *45 and a contempt should be punished by fine or incarceration. We hold that the court could impose incarceration for contempt in this case.
We find that the facts before us justify the imposition of a 60-day detention in the Champaign County Youth Detention Center. As a condition of the supervision order entered February 7, 1979, besides ordering the minor to attend school, the court also directed that the minor be taken on a tour of the Champaign County Youth Detention Center. The minor violated the terms of this supervision order by not attending school, and on May 31, 1979, the court entered its first contempt order and placed him on probation. As a condition of the probation sentence, the minor was directed to serve 19 days at the Champaign County Youth Detention Center. On October 31, 1979, another petition for a rule to show cause was filed alleging that the minor had failed to attend school since September 4, and that he had not reported to his probation officer since August 22, 1979, although he had been ordered to report weekly. It is obvious that the tour of the detention facilities, as required by the first order of the court, and the sentence of 19 days at those facilities, as required by the second order of the court, were not sufficiently impressive punishment to convince the minor that court orders must be obeyed. The record discloses the judge's serious concern for the welfare of the minor. Before imposing the 60-day sentence, the judge had a lengthy discussion with the minor and indicated that despite the failure of the minor to cooperate and the lack of success in dealing with the minor on the previous occasions, the judge was not going to give up. Just as this court noted in In re Baker that the trial court apparently felt that the alternate remedy provided by the court was without sufficient deterrent effect (In re Baker (1978), 71 Ill.2d 480, 485), it is also obvious that the court in this case was aware that its previous orders had not had the desired effect of convincing the minor that he must obey the lawful orders of *46 the court. The trial court, therefore, in the exercise of its discretion, increased the severity of the penalty and ordered the 60-day detention.
In the exercise of the court's inherent power to punish for contempt, it may provide such reasonable punishment as it determines is required. (People ex rel. Rusch v. Enger (1936), 364 Ill. 464, 466-67; 17 Am.Jur.2d Contempt § 105 (1964).) Under the facts which confronted the trial judge when the 60-day sentence to the detention facility was imposed as a condition of the sentence of probation, it cannot be said that such a sentence constituted an abuse of discretion.
The validity of the appellate court's decision concerning costs has not been raised in this court. The appellate court judgment is affirmed in that respect. The judgment of the appellate court is reversed insofar as it reverses the probation order and the sentence of 60 days' incarceration. The cause is remanded to the circuit court of Champaign County for further proceedings consistent with this opinion.
Affirmed in part and reversed in part, and remanded.
JUSTICE WARD, dissenting:
I must dissent from what I consider to be a melancholy and inappropriate disposition of this case of a 16-year-old truant. I believe that the invoking of the contempt power frustrates the design of the legislature to provide specialized handling, through the Juvenile Court Act, of nondelinquent minors in need of supervision or care. The use of the power under the circumstances was an abuse of judicial discretion. The boy had already served 19 days at a detention center without visible benefit. The imposing of the more severe punishment of 60 days' detention may, I fear, exacerbate his difficulties and be fully destructive of a desire to learn or a *47 willingness to resign himself to school attendance.
The majority states that the trial court had a serious concern for the minor's welfare and, before imposing the 60-day sentence, had a lengthy discussion with him. In it the court indicated that despite its earlier failure to correct his truancy, it was not going to give up. There is, however, no suggestion of any medical, psychological, or other testing of the boy in an attempt to ascertain what learning or other difficulties were present. There is no reference to any professional counseling, background investigation, or conferences by the court with school-attendance consultants for recommendations to determine and resolve the boy's problems.
I am confident there were preferable alternatives to incarcerating this boy. If there were not, it would show a frightening poverty of society's resources to deal with the question of truancy.
Society has a vital interest in the education of the young, and there is no doubt that habitual truancy is a vexing problem. I do not believe that action which abridges fundamental liberties more broadly than necessary should be approved. A valid governmental purpose should be served by use of the least restrictive viable means. Shelton v. Tucker (1960), 364 U.S. 479, 5 L.Ed.2d 231, 81 S.Ct. 247. See also Chicago Board of Education v. Terrile (1977), 47 Ill. App.3d 75.
The majority considers that the punishment is justified because of the offense to the dignity of the court. I consider that the dignity of the judicial process was not served by this exercise of the contempt power.
JUSTICE SIMON, also dissenting:
Sentencing a 16-year-old boy to 60 days in a detention center for contempt of court because he refused to attend school is in my judgment a circumvention of the statutory policy of this State. I also believe it is harsh to the point of *48 being an abuse of discretion and that confinement for that length of time in a detention center is likely to do the minor as well as society more harm than good. It is for these reasons that I dissent.
The Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, pars. 702-2, 702-3) provides for two distinct categories of errant youths: delinquent minors and minors otherwise in need of supervision. Delinquents are those who have violated some penal statute or ordinance, while those otherwise in need of supervision include incorrigibles, habitual truants and drug addicts. The latter category, with the possible exception of drug addicts, is thus made up of youths who would have committed no offense at all had they not been minors at the time they committed the act for which they are being disciplined. Also included by statute, in the "otherwise in need of supervision" category, are minors who have violated a court order entered under the Act. That provision, which became effective in 1974, was included to forestall the bootstrapping practice of transforming a minor otherwise in need of supervision into a delinquent minor through the use of the contempt power. This was accomplished by the court ordering the minor to attend school or stop his otherwise unacceptable behavior. Upon failure to comply with that directive, he was found in criminal contempt and adjudicated a delinquent minor on that basis, despite the fact that his underlying behavior was unchanged. The only difference was that the minor's continued refusal placed him in the position of violating a court order rather than a State law, a difference that the legislature since 1974 has deemed insufficient to warrant a change in status from a minor otherwise in need of supervision to a delinquent minor.
The Act provides a different set of dispositional possibilities for each class of minors, and for that reason the distinction between them is significant. A minor otherwise in need of supervision may be committed to the Department *49 of Child and Family Services for placement in a shelter home or foster family, placed with the Department of Mental Health and Developmental Disabilities for treatment, placed under court supervision and released to his parents, or emancipated; unlike a delinquent minor he may not be placed in a detention center.
In limiting the disposition that can be made of a minor otherwise in need of supervision, the legislature expressly determined that truants, even those who are ordered by the court to attend school, would not benefit from confinement, especially confinement with true juvenile delinquents. The legislature therefore wisely decided to stop short of placing such minors in detention centers. The need for punishment was not regarded as compelling enough to justify the risk of driving such youths further afield by confining them with delinquents who might be underage rapists, thieves and armed robbers.
This legislative mandate is largely in keeping with the Federal Juvenile Justice and Delinquency Prevention Act, section 223 (42 U.S.C. § 5633(12) (1974)), as it existed until 1980, which provides funding to States for juvenile crime prevention. The funding is conditioned upon compliance with guidelines which included a prohibition against placing truants and incorrigibles in detention. Interestingly, if today's decision had been filed a year ago, it might have placed this State's funding in jeopardy. Amendments to the Federal Act in 1980 allowed the detention of juvenile contemnors. Apparently believing that the pre-1980 act prohibited the court from using its contempt power to jail truants, the amendment's sponsor stated that his amendment was intended to restore the juvenile court's legitimate power. (126 Cong. Rec. H10932 (1980) (remarks of Rep. Ashbrook).) But, the Illinois statute remains unaltered. It does not grant the juvenile court increased authority; on the contrary it continues to provide that minors in violation of a court order are not delinquents and are not to be treated as *50 such.
The court today has circumvented this important State policy. Despite the clearest expression to the contrary from the legislature, the majority sanctions the detention of minors whose greatest offense against society is to refuse to go to school. Although this court clearly could not under the statute allow the State to file a delinquency petition based on G.B.'s violation of the court order, it nevertheless is allowing the offended juvenile court itself to apply its contempt sanctions. In substance, it is permitting the juvenile court to accomplish indirectly what it could not directly do, jail a truant as a juvenile delinquent. By this judicial sleight of hand, the majority has made a dead letter of the legislature's declaration that minors who violate juvenile court orders are to be treated as minors otherwise in need of supervision. This result was clearly not intended by the legislature and should not be allowed by this court. Although the statute does not eliminate the use of a court's contempt powers, it must be read to prohibit the use of that power to jail minors for conduct for which the legislature has said they should not be jailed. The policy advanced by the legislature is too basic a part of the Juvenile Court Act to allow its circumvention even in the interest of vindicating the court's dignity and authority.
Other courts have condemned similar efforts to circumvent legislative policy on juvenile treatment. In In re Ronald S. (1977), 69 Cal. App.3d 866, 138 Cal. Rptr. 387, a California appellate court disapproved a juvenile court's attempt to do "by indirection that which cannot be done directly." (69 Cal. App.3d 866, 874, 138 Cal. Rptr. 387, 392.) The juvenile court had elevated a runaway to delinquent status by allowing a petition for delinquency alleging as the cause criminal contempt of court, a statutory offense under the California Penal Code, despite an amendment by the California legislature deleting youths who had violated a court order from the definition of juvenile delinquent. This *51 holding illustrates the proper treatment of attempts by trial courts to evade legitimate legislative policy, even though the bootstrapping technique used was not precisely identical to that used here. See In re Mary D. (1979), 95 Cal. App.3d 34, 156 Cal. Rptr. 829; In re Bellanger (La. App. 1978), 357 So.2d 634; In re M.S. (1977), 73 N.J. 238, 374 A.2d 445. See also State ex rel. L.E.A. v. Hammergren (Minn. 1980), 294 N.W.2d 705. But see R.M.P. v. Jones (Fla. App. 1980), 392 So.2d 301 (the Florida statute classifies contemnors with delinquent minors).
The majority states that because the power to enforce court orders through contempt proceedings is inherent to judicial authority, the legislature may not limit its use. (See In re Baker (1978), 71 Ill.2d 480, 484; People ex rel. Rusch v. White (1929), 334 Ill. 465, 484.) This separation of powers argument is advanced to excuse the juvenile court's contravention of legislative policy. It is, however, one thing to hold, as this court did in In re Baker, that the contempt power is not directly controlled by the Juvenile Court Act and quite another to permit its use as a tool to nullify the policies of that act. While In re Baker may allow a judge to go outside the list of dispositional alternatives permitted for minors otherwise in need of supervision when sentencing for contempt, it in no way allows him to sentence such a minor to jail. The elimination of detention for such minors is such an important feature of the statute that if it is not read to prohibit detention in such circumstances, the statute loses its power and effect. I find a lack of logical consistency between what this court did in In re Baker and what the majority approves in this case. In In re Baker, where this court's opinion does not indicate the juvenile was sentenced to detention, the court said a finding of contempt cannot be used "as a basis for an adjudication of delinquency under the valid and unambiguous terms of the Juvenile Court Act." (71 Ill.2d 480, 485.) Yet, here the court says a finding of contempt can be used to justify 60 days of confinement *52 in a detention facility, the type of disposition that is purposely reserved for delinquents. I view this as an unwarranted extension not only of what was decided but also what happened in In re Baker and a perversion, in the name of vindication of judicial authority, of the public policy adopted by the legislature.
Although it is perhaps true that the legislature may not invade a court's ability to enforce its orders or to vindicate its authority over contemnors, this court has never held that the legislature has no authority to regulate a court's use of its power by prohibiting particular sanctions. That is all the Act seeks to do; it provides a minor shall not be detained with delinquents merely for violating a court order when his underlying behavior is not egregious enough to qualify him as a delinquent. In Newton v. Locklin (1875), 77 Ill. 103, the court upheld a statute that set $5 as the punishment for contempt involving unruly behavior before a justice of the peace. The justice of the peace involved was held to have exceeded his powers by committing the plaintiff to prison instead. (See also State ex rel. Oregon State Bar v. Lenske (1965), 243 Ore. 477, 405 P.2d 510, cert. denied (1966), 384 U.S. 943, 16 L.Ed.2d 541, 86 S.Ct. 1460.) The legislature here has not destroyed the juvenile court's ability to enforce its orders. It has simply removed one possible punishment from the arsenal available to the court. This does not constitute a usurpation of power. Rather, it is a necessary part of the implementation of legitimate State juvenile policy.
Even if the court's contempt power is wholly above the legislature's ability to control, however, I do not understand why this court should allow a juvenile court to impose so harsh a sentence and to deliberately circumvent the legislature's policy on juveniles. The contempt power is an extraordinary one that should be used sparingly and with the utmost sensitivity. (See Bloom v. Illinois (1968), 391 U.S. 194, 20 L.Ed.2d 522, 88 S.Ct. 1477; Fox v. Fox (1978), 56 Ill. App.3d 446; *53 Board of Junior College District No. 508 v. Cook County College Teachers Union, Local 1600 (1970), 126 Ill. App.2d 418, cert. denied (1971), 402 U.S. 998, 29 L.Ed.2d 165, 91 S.Ct. 2168.) It is an abuse of discretion to use it deliberately to circumvent the policy behind statutory law, especially when alternatives are available. The trial judge did not have the benefit of any professional evaluation of G.B. except for a routine presentence report. It seems to me that in such a difficult case the trial judge would have sought additional assistance, including individualized psychological evaluation, before adopting such a drastic solution.
Beyond that, and wholly apart from the statute, I regard it as an abuse of discretion to imprison a minor for 60 days for playing hooky. While I sympathize with the juvenile court's exasperation with this boy, this court should not tolerate the solution applied. I think this is especially the case here because the juvenile court judge had already sentenced G.B. to serve 19 days in the detention facility for contempt of court because of his truancy. Serving that sentence did not convince G.B. of the value of any further schooling, and there is nothing in this record which could lead one to believe that 60 additional days of detention would have a more persuasive influence on this minor. There are some things the law cannot realistically be relied upon to accomplish. Forcing a 16-year-old apparently incurable truant to attend school regularly and sit still long enough to learn something is one of them.