117 Ill. App.3d 89 (1983)
452 N.E.2d 876
In re K.M.B., a Minor  (The People of the State of Illinois, Petitioner-Appellee,
v.
K.M.B., Respondent-Appellant).
No. 4-82-0780.
Illinois Appellate Court  Fourth District.
Opinion filed August 10, 1983.
*90 Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.
Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Order affirmed.
JUSTICE GREEN delivered the opinion of the court:
On February 9, 1982, respondent, K.M.B., was before the circuit court of McLean County pursuant to a petition alleging her to be a minor otherwise in need of supervision (Ill. Rev. Stat. 1981, ch. 37, par. 702-3) because of her truancy. Before any findings were made at this hearing, the parties requested a general continuance with the minor to be under supervision (Ill. Rev. Stat. 1981, ch. 37, par. 704-7). The court continued the case and placed the minor under a supervisory order requiring her to "attend school each and every day, each and every hour of every school day, that she be in attendance." On February 22, 1982, and June 18, 1982, petitions for rules to show cause contending that the minor had violated the order of continuance were filed. The former was dismissed. The latter was granted and on July 26, 1982, after a hearing, the court found that the minor had violated the terms of the order and was in contempt of court. On September 3, 1982, the court placed the minor on 24 months' probation conditioned on four days' imprisonment.
The minor has appealed, contending: (1) The trial court lacked jurisdiction to enter the orders of continuance and contempt; (2) the petition for rule to show cause failed to apprise the minor of the conduct which violated the supervisory order; (3) the order of continuance should have stated that the minor could be absent from school if *91 she had a valid excuse; (4) the order of continuance was not subject to enforcement in an indirect criminal contempt proceeding; (5) the order of continuance did not inform respondent that tardiness would be a violation of the supervisory order; and (6) the contempt sanction imposed constituted cruel and unusual punishment.
The minor's contention that the trial court lacked subject matter jurisdiction of the proceeding in which the order of continuance was entered is based on the theory that the court's subject matter jurisdiction is based upon the sufficiency of the original petition. The minor's argument that the petition was insufficient arises from the statement in the original petition that the minor was truant for 11 days within a period of some 80 consecutive school days. Although section 2-3 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 702-3) provided, at pertinent times, that one category of a minor otherwise in need of supervision was a minor who had been "habitually truant," the Act does not define that phrase. However, prior to January 1, 1982, section 26-2a of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 26-2a) stated that an "habitual truant" was "a child subject to compulsory attendance and who [was] absent without valid cause from such attendance for 15 out of 90 consecutive school days." After January 1, 1982, the reference frame became 10 out of 40 consecutive school days. (Ill. Rev. Stat. 1981, ch. 122, par. 26-2a.) The minor maintains that (1) section 26-2 of the School Code defines the phrase "habitually truant" for purposes of section 2-3 of the Act, and (2) the petition showed on its face that any truancies by the minor were not severe enough to make her an "habitual truant."
We note that by Public Act 82-969 effective January 1, 1983, section 2-3 of the Act (Ill. Rev. Stat., 1982 Supp., ch. 37, par. 702.3) was amended to provide that the words "chronic or habitual truant" were to be defined by section 26a-2 of the School Code. We need not decide whether the previous intent of section 2-3 was to incorporate the definition of the School Code because we hold that the variance claimed here between the allegations of the petition and the requirements of section 2-3 of the Act, even if the section 26-2a definition was incorporated, would not deprive the circuit court of subject matter jurisdiction.
Section 9 of article VI of the Illinois Constitution of 1970 provides that the circuit court has "original jurisdiction of all justiciable matters" with minor exceptions not applicable here. In People v. Gilmore (1976), 63 Ill.2d 23, 344 N.E.2d 456, the supreme court stated that in a criminal case the circuit court's subject matter jurisdiction is not dependent upon the sufficiency of the charge. Similarly, in Lopin v. Cullerton *92 (1977), 46 Ill. App.3d 378, 361 N.E.2d 6, the court determined that as long as a case presents a justiciable matter the circuit court has jurisdiction of the case and the failure to follow statutory provisions may constitute error, but does not deprive the court of jurisdiction. We have recently spoken upon this change in concept at some length in In re L.E.J. (1983), 115 Ill. App.3d 993, in holding that the circuit court's subject matter jurisdiction under the Juvenile Court Act is not dependent upon compliance with statutory provisions concerning notice to parents of the minor. See also In re Estate of Mears (1983), 110 Ill. App.3d 1133, 443 N.E.2d 289.
 1 In view of the foregoing precedent, we have no hesitation in holding that subject matter jurisdiction was not lacking when the petition alleged that the minor was an habitual truant even if the petition set forth ultimate facts that were, of themselves, insufficient to support the allegation. The court had subject matter jurisdiction to enter the order of continuance and, thus, to make the minor subject to that order.
 2 The minor maintains that her father received no notice of the hearing on the rule to show cause and, as a result, the court lacked subject matter jurisdiction to enter the order of contempt. Although the contempt proceeding was criminal in nature, the minor contends that because of her minority, the Juvenile Court Act procedures should have been followed and her father given notice. Under In re L.E.J., lack of notice to the father would not have deprived the court of subject matter jurisdiction even if compliance with the Act's procedures was required. In any event, we know of no authority which requires giving notice to the parents of a respondent when the court is exercising its inherent power to punish for contempt. See In re G.B. (1981), 88 Ill.2d 36, 430 N.E.2d 1096.
We consider the well-known decision in In re Gault (1967), 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428, to be applicable only to juvenile proceedings. There, the United States Supreme Court was concerned with summary procedures often used in juvenile proceedings where the traditional safeguards of a criminal proceeding were ignored. The contempt order was rendered neither void nor erroneous because of any failure to notify the minor's father.
 3 The minor maintains she was not sufficiently apprised of the conduct she was charged with because the petition for rule to show cause failed to allege that her conduct in not attending school was wilful. We called attention to the importance of an allegation of wilfulness in charging indirect criminal contempt in the case of In re T.V.P (1980), 90 Ill. App.3d 800, 414 N.E.2d 209, but we reversed on other *93 grounds. The petition did allege that the minor's absences were "without authority." Thus, the petition gave some indication that the minor was being charged with missing classes when she had no valid excuse to do so. Accordingly, the failure to allege wilfulness is not fatal when the issue is raised for the first time on appeal. People v. Pujoue (1975), 61 Ill.2d 335, 335 N.E.2d 437.
 4 The minor attacks the terms of the continuance order for its failure to provide that she might be properly absent for a reason recognized by section 26-2a of the School Code (e.g., illness, family emergency, etc.). Notably, section 4-7(6)(k) of the Juvenile Court Act (Ill. Rev. Stat., 1982 Supp., ch. 37, par. 704-7(6)(k)), which became effective September 8, 1982, five days after the contempt order, lists as a permissible condition of continuance under supervision, a requirement that the minor "attend school." Thus, that statutory provision does not set forth the qualifications of such a requirement. Although the continuance order's provisions were unnecessarily broad for failure to indicate that certain absences might be excused (see In re K.S.Y. (1981), 93 Ill. App.3d 6, 416 N.E.2d 736), there is some inherent implication in the order that noncompliance on reasonable grounds was permitted by the order. The record gives no indication that the minor here was confused in regard to whether she was required to attend school when she had a reasonable excuse not to do so. The order of continuance did not contain error.
The court entered an oral order of continuance setting forth the conditions of supervision. No written order was ever filed. When a minor is placed on probation or conditional discharge, section 5-3(2) of the Act (Ill. Rev. Stat. 1981, ch. 37, par. 705-3(2)) requires that the minor be given a certificate setting forth the conditions thereof and section 5-3(9) (Ill. Rev. Stat. 1981, ch. 37, par. 705-3(9)) provides that rules or orders of the court "must specify the term and conditions of supervision ordered under this Act." The minor contends that her contempt conviction was erroneous because she never received a written document setting forth the rules of her supervision during continuance.
The minor cites the case of In re Serna (1978), 67 Ill. App.3d 406, 409, 385 N.E.2d 87, 89. There, a minor was also placed on supervision during continuance under section 4-7 of the Act. The court admonished the minor "`to stay out of trouble'" and "`to listen to his mother and to his probation officer'" and stated that a set of rules would be given to him. The appellate court concluded that termination of the minor's supervision for violating a condition of supervision, about which he was never told, violated due process. The court noted *94 that section 5-3(9) required that rules or orders of court specify the conditions of supervision. Here, the court order did specify that the minor was to attend school every day and each hour of the day. Although it is highly desirable that the minor receive a concise written statement of the conditions of supervision, the Act does not expressly so require. Because the record gives no indication that the minor was unaware of what was required of her, clearly no due process violation occurred. We again find no reversible error.
A further problem has arisen in this case because the conditions of the order of continuance made no express reference to the minor being tardy, yet all of the absences shown to have been committed by the minor were actually instances of tardiness. In the case of In re M.C. (1980), 89 Ill. App.3d 1130, 412 N.E.2d 709, a court direction to a minor to attend school was held to be insufficient to support a finding of contempt for tardiness. However, there was no direction in that case that the minor attend "each and every hour of every school day" as here. Technically, the minor could be less than an hour late in the morning and thus attend during every hour. However, we deem the direction for the minor to attend "each and every hour" to prohibit tardiness. Although the record indicates dispute as to whether there was confusion on the part of the minor's family as to when school started, the record gives no indication that the minor thought that inexcusable tardiness was not a violation of the order.
The minor's half brother testified that he had the responsibility for taking the minor to school and that he had thought that school started at 9:10 a.m. when it actually started at 9:05 a.m. He stated that the minor had told him he was wrong, but he did not believe her. He indicated that he did not trust her and was afraid to take her to school before the required time because he thought she might be more likely to leave school if he did so. His testimony was not directly contradicted, as he and the minor were the only persons privy to these alleged conversations and she did not testify.
The trial judge did not believe the testimony, and the minor has not contended on appeal that he was required to do so. The minor was 13 years old at the time of the contempt hearing and had been 12 years old during the period when the tardiness was an issue. She had been before the court in February of the school year when the order of continuance under supervision was entered. Later that month, a rule to show cause was entered against her charging her with the failure to comply with the previous court order on two dates, one of which was February 15, 1982. That rule was discharged without a hearing, but February 15, 1982, was one of the dates upon which she *95 admitted at the contempt hearing that she had been late to school. The minor's mother testified that the minor had never complained to her that the half brother was not getting her to school on time.
The trial judge could have properly concluded that, considering the age of the minor and the admonitions given her to be regular in her school attendance, it would be most unlikely that she would not complain to her mother if her half brother were regularly making her tardy by failing to get her to school on time. The testimony of the half brother did not preclude a determination by the trial court that the minor's failure to attend classes on time was wilful.
 5 It is important to recognize that the alleged conduct which originally brought the minor before the court was to be measured by a statutory definition of the word "truant." However, the conduct alleged to constitute contempt is measured not by statutory definitions, but by the terms of the order as long as those terms involved a requirement that the minor "attend school." The trial court's contempt power against a party who disobeys the court order is not limited by a legislative determination as to the responsibility for disobedience to compulsory attendance laws. (See G.B.; In re Baker (1978), 71 Ill.2d 480, 376 N.E.2d 1005.) The issue is not whether the minor's conduct was in defiance of parental authority, but whether it was in defiance of the authority of the court.
Finally, the minor maintains that the contempt conviction subjects her to cruel and unusual punishment because truancy is a status and a status cannot be a ground for punishment. (Robinson v. California (1962), 370 U.S. 660, 8 L.Ed.2d 758, 82 S.Ct. 1417.) The issue was not raised below and is waived. (People v. Amerman (1971), 50 Ill.2d 196, 279 N.E.2d 353.) Furthermore, here, the minor was not being punished for being a member of a group classified as truants, but rather for the failure to perform certain acts, namely attending school regularly. The fact that certain acts of omission or commission are influenced by the status of the actor does not give the actor an eighth amendment defense. (Powell v. Texas (1968), 392 U.S. 514, 20 L.Ed.2d 1254, 88 S.Ct. 2145.) Although the question of whether the incarceration imposed constituted cruel and unusual punishment was not raised, it is notable that the seminal case of In re G.B. (1981), 88 Ill.2d 36, 430 N.E.2d 1096, involved the violation of an order for a minor to attend school. The sanction imposed here did not constitute cruel and unusual punishment.
We recognize the volume of cases arising concerning juveniles and of the necessity of disposing of them expeditiously, using forms for petitions, notices, and orders. However, we urge those involved to proceed *96 with precision. Here, the order of continuance made no mention that a reasonable excuse might justify a failure to attend and made no direct reference to tardiness. No written document setting forth the conditions of supervision was given to the minor. The petition for rule to show cause did not allege wilfulness. If notification to a minor's parents is required for proceedings under the Juvenile Court Act, it is highly desirable that such a parent be notified of a contempt proceeding brought for failure to comply with an order entered under the Act.
 6 We have not found any of the above shortcomings to have prejudiced the minor here and, accordingly, have found no reversible error to have occurred. Our affirmance should not negate our expression of the need for care in this type of case.
We do, however, affirm.
Affirmed.
MILLER, J., concurs.
PRESIDING JUSTICE WEBBER, dissenting:
I respectfully dissent and suggest that the majority has performed some remarkably facile semantic divagations in order to reach a desired result. This case is fatally flawed both procedurally and substantively.
As to procedure, we have recently spoken at length on the mechanics of contempt in People v. Mowery (1983), 116 Ill. App.3d 695, and there is no need to rehash that opinion here. In the case at bar we have nothing but an oral order from the bench and a petition for rule which fails utterly to allege that the respondent's conduct was wilful. The majority places a narrow focus on In re T.V.P. (1980), 90 Ill. App.3d 800, 414 N.E.2d 209, in an apparent effort to avoid the salutary admonition in that opinion that contempt should be used sparingly in supervisory cases. We have also condemned the parallel system of juvenile justice growing out of the contempt power. In re K.S.Y. (1981), 93 Ill. App.3d 6, 416 N.E.2d 736.
A random parol order followed by a deficient petition yielding severe punishment is scarcely something to inspire unlimited confidence in the system.
More significant in my judgment is the failure of the trial court and the majority to comprehend the nature of truancy. They place the entire burden on the child, while the law is that truancy is the responsibility of the parents. In Chicago Board of Education v. Kouba *97 (1976), 41 Ill. App.3d 858, 866, 354 N.E.2d 630, 636, it is stated:
"We think truancy may be defined as the wilful unexcused refusal of a pupil to attend school in defiance of parental authority and in violation of an applicable compulsory school attendance law." (Emphasis added.)
It is true, as the majority notes, that "habitual truant" is defined in section 26-2a of the School Code, but it is of greater importance that the penalty for such conduct is laid upon the person having custody or control of the child under section 26-10 (Ill. Rev. Stat. 1981, ch. 122, par. 26-10). The sole evidence on behalf of the State was the minor's attendance record at school; she did stipulate to it; and it showed the number of times tardy. The majority lays emphasis on the testimony of the half brother, who was 22 years old and appeared on behalf of the minor. He did state that he ignored the minor's protests, but also stated that he really "wasn't clear" on what time classes commenced. The minor's mother also testified on her behalf and stated that she had no idea why the brother conceived the notion that school began at 9:10 rather than 9:05; she stated further that she did not realize that the minor was being tardy until so notified by the school authorities near the end of May. The tardiness began in February. If, as the majority holds, it was unlikely that the minor would not complain to her mother, why is it likely that the school authorities would allow the condition to perpetuate itself over a period of three months? Even if we assume that the trial court did reject all of the minor's evidence, as it was privileged so to do, there is nothing left in the record except the minor's attendance record, a mute piece of paper which tells us nothing about the minor's motivations, whether wilful, negligent, mistaken, careless, involuntary, or any other frame of mind. The evidence in no way sustains the trial court's order and finding.
The cold fact of the matter is that this minor received the worst of three forces, all arrayed against her: her brother, the school, and the courts.
The majority also holds that her conduct was not truancy but disobedience of a court order. Just how an act which would not be culpable in the absence of a court order becomes so by virtue of that order escapes me. If the court orders a minor not to sneeze and he does so, presumably he may be punished. It is only one more reason for harnessing the contempt power.
As a matter of philosophy, I find it depressing to observe that truancy, being a school problem under the School Code, has been grafted onto the juvenile justice system because the school authorities have *98 been unable to solve it. Just why a circuit judge possesses more expertise is a question not answered by the statute.
I would vacate the contempt order and sentence.