**People of the State of Illinois, Plaintiff-Appellee, v. Alvin Lee Lyons, Defendant-Appellant.**

**Gen. No. 50,055.**

First District, Fourth Division.
June 30, 1965.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant was convicted of armed robbery [1] at a bench trial and sentenced to a term in the penitentiary for a period of one to four years.

Defendant argues that the evidence failed to prove him guilty beyond a reasonable doubt and that the trial court abused its discretion in failing to consider defendant's application for probation.

Complainant Gertrude Mason testified that on June 6, 1964, she met defendant about 12:30 p. m. on her way to visit Willie Robins; that she had known defendant for about a year; that she and his wife used to be good friends; that defendant asked: "Where you on your way to?" and that she replied: "Willie's." She testi-

[1] Ill Rev Stats 1963, c 38, § 18-2.

fied that Robins admitted both of them to his apartment; that defendant then asked her for fifty cents; that she gave him fifty cents from a handkerchief containing about $1.19 which she kept in her bosom. She testified that as she was secreting the handkerchief in her bosom:

> . . . the defendant threw his knife around my throat and said, "Give me all of your money. I'm going to keep it. Give me all of your money. Give me all that money." I told him, "That's my money." At that time Mr. Robins was in the bathroom, and then he came out of the bathroom and into the bedroom, and we were in the kitchen scuffling.

She elaborated:

> After he put his arm around my neck and put this knife up to my throat, he put his hand in my bosom and tore my dress and got my money. He tore my dress on the side. Defendant got the money in the handkerchief and all.

She further testified that Robins had said: "Don't rob her. Don't you take her money in my house"; that defendant and Robins scuffled and that defendant hit him once on the nose; that she "hopped out the window" after defendant slapped her on the jaw; that she called the police and that the police arrived about fifteen or twenty minutes after she called them. She identified People's Exhibit 1 as the knife defendant put around her throat.

People's witness Willie Robins testified as to what occurred after defendant and Mason entered his apartment:

> They had a seat and they were sitting talking and Lee Lyons asked her for fifty cents so she went

342

into her bosom to give it to him. I turned and walked back into the bathroom. . . . When I started towards the bedroom I heard her tell Lee to leave her alone, don't take her money. I wheeled and came back out into the kitchen. He had hold of her and had his hand around her neck. And so then I rushed on in. And so I asked him what was he doing, and she yelled and said, "he try to take my money." And I asked him was he crazy. I said, "Don't do that. Don't take her money in my house."

He described the scuffle which resulted in defendant striking him on the nose. On cross-examination Robins testified that he had known defendant for three years; that defendant had lived with him and that they were good friends; that defendant and Mason had entered his apartment "laughing and talking and looking like they were friendly." He further testified that he saw defendant with a handkerchief but that he never saw the money; that when Mason exclaimed "Don't take my money" he did not know whether she was talking about fifty cents or $119. He further testified that when he spoke to defendant the next day he was greeted in a friendly manner and no reference was made to what happened the night before.

People's witness Detective Louis Cuddy of the Chicago Police Department testified that he talked with complainant on June 7, 1964, at about 10:00 o'clock in the morning; that he noticed that the dress she had on had been torn; that she said it was the same dress she had worn at the time of the alleged robbery; that he arrested defendant later on that day and took the knife (People's Exhibit 1) out of his right front pants pocket. On cross-examination he testified that the original complaint was made at approximately 4:55 p. m. on June 6, 1964, by Mrs. Mason; that the original officer who investigated the case was not in court;

343

and that he (Cuddy) made an official report of his investigation into this robbery. He further testified that although his investigation revealed that up to the time of the incident defendant had been shabbily dressed, that when he placed him under arrest defendant was pretty well dressed; and that defendant stated that he "did not at the time have a job."

Defendant testified that he saw Gertrude Mason about 9:00 a. m. on June 6th; that she was "hanging out the window of her house;" that she "throwed me a can of beer out the window and fifty cents to get me a bottle of wine;" and that he did not ask her for any money. He testified that he had been acquainted with Mason for two and a half years; that she "used to come up there (defendant's home) all the time on week ends;" that he did not see her again until June 7, 1964, when she was with the police; and that he did not go to Willie Robins' home on the day of the alleged incident. He testified that he carried a knife because he had been robbed. He testified that on the afternoon of June 6, 1964:

> . . . I was sitting in the park. I was sitting in the park for about thirty minutes. The rest of the afternoon I was around on Adams. I was around there until about 4:00 o'clock. From there I went nowhere special. I was just messing around the house. I go up there to the liquor store on Fifth Avenue and back to the house. At no time was I over at 307 South Christiana, on June 6, 1964. At no time on the 6th of June did I take $119 from Gertrude Mason. I didn't take any money. When arrested, I did not try to attempt to escape from the police officer. I didn't say anything about not wanting to put up my hands. I didn't say anything to Willie Robins. I did not, on the night of June 6, acquire any new clothes.

344

On cross-examination he testified that between 4:00 o'clock and 6:00 o'clock he was sitting in front of his house with his brother, the landlady and "all family peoples around there . . . drinking beer."

■ Defendant argues that the evidence does not prove him guilty beyond a reasonable doubt because it is "improbable, unconvincing and contrary to human experience" that an individual would rob a friend at knife point. Defendant's sole authority is People v. Dawson, 22 Ill2d 260, 174 NE2d 817. There are few controlling factual similarities between this case and Dawson; moreover, it is not totally contrary to human experience that an individual would take advantage of a personal relationship to commit a criminal act. People v. Parks, 54 Ill App2d 442, 203 NE2d 434.

■ ■ Mason and Robins detailed the assault, the clutching of Mason's dress, the arm around her neck and the scuffle between defendant and Robins. At the trial both witnesses identified People's Exhibit 1 as the knife used by defendant; Officer Cuddy corroborated the identification. In People v. Boney, 28 Ill2d 505, at 510, 192 NE2d 920, the court stated:

> Because a trial court as the trier of fact is peculiarly suited to determine questions of truthfulness, a reviewing court will not readily substitute its own conclusion, (People v. Woods, 26 Ill2d 582), unless the proof is so unsatisfactory as to justify a reasonable doubt of guilt. People v. Means, 27 Ill2d 11.

See also People v. Clark, 30 Ill2d 216, 219, 195 NE2d 631. We cannot say that the evidence in the case at bar was improbable, unconvincing or contrary to human experience or that there was a reasonable doubt as to defendant's guilt. Defendant's conviction is affirmed.

■

Defendant also contends that the trial court abused its discretion in denying his application for probation.[2]

The hearing on aggravation and mitigation disclosed that defendant had been found guilty of petty larceny in 1959 and an ordinance violation involving disorderly conduct in 1964. The State's Attorney recommended a sentence of one to five years. Defendant's attorney stated: "Maybe we don't need the pre-sentence investigation" and requested that the court place defendant on probation because "he is a good risk." The court replied: "Probation denied. I am not putting anybody on probation who robs anyone with a knife."

■ In People v. Hamby, 6 Ill2d 559, 129 NE2d 746, the Supreme Court held that the trial court did not err in failing to direct an investigation by a probation officer. Construing the statute the court, at page 566, said: [3]

[2] Ill Rev Stats 1963, c 38, § 117.1, pertains to admission to probation. It provides, in part, that:

(a) A person who has been found guilty of any offense except a capital offense, the sale of narcotics or rape may be admitted to probation when it appears that:
(1) The defendant is not likely to commit another offense;
(2) The public interest does not require that the defendant receive the penalty provided for the offense; and
(3) The rehabilitation of the defendant does not require that he receive the penalty provided for the offense.

[3] The statute in force at the time of Hamby provided that a defendant may be admitted to probation:

. . . where it appears to the satisfaction of the court both that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant shall suffer the penalty imposed by law. (Ill Rev Stats 1953, c 38, par 785.)

The applicable part of the statute is almost identical to the present provision.

The statute requires the judge to consider both the offender and the offense. . . . It does not prescribe the weight to be given to each of the elements to be considered. Nor does it preclude the possibility that in a particular case or class of cases the character of the offense may be thought to dominate the characteristics of the offender.

In People v. Molz, 415 Ill 183, 189, 113 NE2d 314, the court discussed the purposes and problems related to probation:

. . . the granting or refusing of an application for probation generally rests within the sound discretion of the court, this discretion to be exercised primarily for the benefit of society, and only incidentally for the benefit of the accused. (People v. Miller, 317 Ill 33, 38; People v. Bonheim, 307 Ill 316; People ex rel. Barrett v. Bardens, 394 Ill 511.)

We hold that the trial court did not abuse its discretion in denying defendant's application for probation. See also: People v. Coolidge, 26 Ill2d 533, 541, 187 NE 2d 694; People v. Gomez, 29 Ill2d 432, 434, 194 NE2d 299; People v. McDonald, 52 Ill App2d 298, 301, 202 NE 2d 100.

Defendant urges that People v. Evrard, 55 Ill App2d 270, 204 NE2d 777, decided since the passage of the 1963 Code of Criminal Procedure, is authority for reversal and remandment of this case. However, Evrard was determined on defendant's plea for a reduction of sentence and not premised on an abuse of discretion argument. Even if defendant had prayed for a reduction of sentence in this case, the statement of his attorney that "hasn't really been in any real trouble before. . . . I think he is a good risk" would be insufficient to war-

rant probation in view of the evidence and circumstances of the instant case.

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.