(No. 80672.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GLENN W. MEYER, Appellant.

*Opinion filed April 17, 1997.*—Rehearing denied June 2, 1997.

MILLER and BILANDIC, JJ., joined by HEIPLE, C.J., concurring in part and dissenting in part.

Daniel D. Yuhas, Deputy Defender, and Judith L. Libby, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield, and Brett Irving, State's Attorney, of Pittsfield (Barbara A. Preiner, Solicitor General, Arleen C. Anderson, William L. Browers, Robert K. Villa and Stephen J. Zick, Assistant Attorneys General, of Chicago, of counsel, and Paul A. Gagerman, law student), for the People.

Robert Teir and Roger Conner, both of Dallas, Texas, and Kevin Coy, law student, for *amicus curiae* American Alliance for Rights & Responsibilities.

JUSTICE McMORROW delivered the opinion of the court:

The sole question presented for our review in the instant case is whether section 5—6—3(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5—6—3(b) (West 1994)) authorizes a trial court to order, as a condition of probation, that the defendant post a large sign at all entrances to his family farm which reads "Warning! A Violent Felon lives here. Enter at your own Risk!" The appellate court affirmed the trial court's imposition of this condition (277 Ill. App. 3d 784), and defendant appealed (134 Ill. 2d R. 612). We reverse, and hold that the trial court exceeded the scope of its sentencing authority because posting a sign of this type is not a reasonable condition of probation under section 5—6—3(b) of the Code. Therefore, we vacate the order of the circuit court in part.

## BACKGROUND

Following a jury trial, the defendant, Glenn Meyer, was convicted of the aggravated battery of Gary Mason. The trial testimony showed that on February 25, 1995, Gary Mason visited the defendant's farm in order to return some vehicle parts that he purchased from the defendant. Mason and the defendant began to quarrel over whether the parts were functioning properly. During the argument the defendant swung one of the parts at Mason, striking him in the nose and eye, causing several injuries.

At the defendant's sentencing hearing, evidence was presented in aggravation and mitigation. On behalf of the State, Tim Belford testified that in September 1986, he went to the defendant's farm in order to collect monies for two insufficient fund checks issued by defendant to Belford's employer, the First National Bank of Pittsfield. Belford stated that the defendant eventually gave him the money, but then kicked him and ordered him off the farm. Belford acknowledged that a jury acquitted the defendant of aggravated battery charges stemming from this incident.

Next, Harry Dyel testified that in May of 1990, he went to the defendant's farm on behalf of his employer, Shelter Insurance Company, in order to investigate a claim filed by the defendant. Dyel testified that the defendant became hostile because he was annoyed by the company's failure to process his claim promptly. Dyel stated that after he attempted to comply with the defendant's demands for payment, the defendant pushed him down and kicked him several times, causing injuries to his torso, arms, face and head. The defendant was convicted of the aggravated battery of Dyel. Finally, Gary Mason, the victim in the present case, testified regarding the defendant's actions on February 25, 1995.

Several witnesses testified in mitigation. Kenwood Foster testified that he is a licensed clinical social

worker who operates a private counselling service. The defendant began seeing Foster in the fall of 1991. Foster testified that doctors at several different clinics have diagnosed the defendant as having "major depressive disorder" or clinical depression. Foster further stated that he believes that the defendant may also suffer from a condition similar to a type of post-traumatic stress disorder. He indicated that the defendant has been taking prescription medication known as Zoloft, to control his illness.

Foster further testified that certain stresses, such as a perceived threat to the defendant or his family, could trigger a change in the defendant's behavior. Foster acknowledged that the defendant may perceive certain behavior as threatening, even if the average individual would not feel threatened under similar circumstances.

Friends of the defendant, Gregg Smith, David Gratton and Bruce Lightle, also testified. All three described the defendant's good character and reputation within the community.

Mary Meyer, the defendant's wife of 36 years, testified that the defendant's elderly mother relies on the defendant, her only child, for care and assistance. Mrs. Meyer stated that she teaches high school, and has always relied on the defendant to manage the farm. She indicated that her family would suffer great hardship if the defendant were incarcerated. Mrs. Meyer also testified regarding the defendant's prolonged psychological illness and his efforts to control his sickness with medication.

In addition to the testimony of the witnesses, 20 letters were submitted by individuals from throughout the defendant's community. These letters chronicle examples of the defendant's generosity and willingness to assist friends and neighbors in need. The letters contain many descriptions of the defendant's good character and reputation.

Additionally, the presentence investigation report contains a detailed description of the defendant's mental health history. Several psychological evaluations of the defendant, dating from 1989, show that he suffers from major depressive disorder and possibly an additional psychological malady.

Upon evaluating all of the evidence in mitigation and aggravation, the trial court sentenced the defendant to 30 months' probation. The court considered the defendant's family members and the adverse impact that incarceration would have upon them. The court stated that it considered that the defendant was 62 years old, his mother's age and ill-health, and Mary Meyer's need to have the defendant care for the farm, in deciding to sentence the defendant to probation instead of prison.

The court conditioned defendant's probation on the following: (1) payment of $9,615.95 in restitution, (2) payment of a $7,500 fine, (3) payment of a $25 monthly probation services fee, (4) psychological psychiatric evaluation and treatment, (5) one-year home confinement and (6) the placement of a "violent felon" warning sign at each entrance to the defendant's property for the duration of the probation period. With respect to the sign requirement, the court stated that it believed that "maybe [the sign] will protect society." The court's supplemental order regarding the sign provides:

> "As a condition of probation defendant shall erect and maintain at each entrance of his property a 4' X 8' sign with clearly readable lettering at least 8" in height reading: 'Warning! A Violent Felon lives here. Enter at your own Risk!' To be erected by 8-11-95."

The defendant appealed his sentence, arguing that the sign was an improper condition of probation. The appellate court determined that section 5—6—3(b) authorized the trial court to order the sign as a reasonable condition of probation, and affirmed the trial court on this issue. We granted the defendant leave to appeal pursuant to Supreme Court Rule 612 (134 Ill. 2d R. 612).

## ANALYSIS

The sole issue presented to us for review is whether the trial court was authorized to order the violent felon warning sign as a condition of probation. The defendant maintains that the trial court acted outside of the scope of its sentencing authority because the sign is not a reasonable condition of probation within the meaning of the Unified Code of Corrections (730 ILCS 5/5—6—3(b) (West 1994)). Section 5—6—3(b) of the Code lists 16 permissible probation conditions that the trial court may impose "in addition to other *reasonable conditions* relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant in the proper discretion of the Court." (Emphasis added.) 730 ILCS 5/5—6—3(b) (West 1994). The defendant maintains that the warning sign is not a reasonable condition of probation because it does not comport with traditional notions of punishment or probation in Illinois, and instead is an unauthorized "shaming penalty" or a scarlet letter type of punishment. The defendant argues that nothing in the Code supports the subjection of probationers to public ridicule as a goal of probation.

The State responds that while the sign may embarrass the defendant, it is not intended to subject him to public ridicule. Rather, the State and the *amicus curiae*, the American Alliance for Rights and Responsibilities, contend that this condition of probation furthers the goals of probation because it protects the public and serves to rehabilitate the defendant.

The State maintains that the sign protects the public by warning against provoking the defendant and by reducing the number of guests or business invitees who visit the farm. The State and the *amicus* argue that the goal of rehabilitation is fostered by the sign because it reminds the defendant that society disapproves of his criminal conduct. The *amicus* further argues that because the sign reminds the defendant of his offense,

the defendant will modify his behavior and will be less likely to commit acts of violence in the future. Finally, both the State and the *amicus* argue that the trial court acted within its discretion by carefully fashioning the conditions of probation to correspond to the needs of the defendant and the public.

Generally, the trial court is afforded wide discretion in fashioning the conditions of probation for a particular defendant. See *People v. Harris*, 238 Ill. App. 3d 575 (1992). However, while the trial court has discretion to impose probation conditions which will foster rehabilitation and protect the public, the exercise of this discretion is not without limitation. See *Harris*, 238 Ill. App. 3d at 581.

Section 5—6—3(b) of the Code contains 16 permitted conditions of probation which may be imposed "in addition to other *reasonable* conditions." (Emphasis added.) 730 ILCS 5/5—6—3(b) (West 1994). Requiring the defendant to erect a sign on his property, proclaiming his status as a violent convicted felon, is not statutorily identified as one of the conditions of probation. The statute gives the trial court the discretion to impose additional conditions of probation provided that they are reasonable. See *People v. Ferrell*, 277 Ill. App. 3d 74, 79 (1995). In *Ferrell*, the court determined that a probation condition not expressly enumerated in the statute may be imposed as long as it is (1) reasonable and (2) relates to (a) the nature of the offense or (b) the rehabilitation of the defendant as determined by the trial court. See also *People v. Hubble*, 81 Ill. App. 3d 560 (1980); *People v. Dunn*, 43 Ill. App. 3d 94 (1976). We must, therefore, determine whether compelling defendant to post a 4-foot by 8-foot sign in front of his residence which, in 8-inch-high letters, states that defendant is a violent felon is a reasonable condition under section 5—6—3 of the Code.

Section 1—1—2 of the Unified Code of Corrections provides:

"The purposes of this Code of Corrections are to:

(a) prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders;

(b) forbid and prevent the commission of offenses;

(c) prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents; and

(d) restore offenders to useful citizenship." 730 ILCS 5/1—1—2 (West 1994).

Consistent with this legislative intent, this court has recognized repeatedly that the purpose of probation is to benefit society by restoring a defendant to useful citizenship, rather than allowing a defendant to become a burden as an habitual offender. *People v. Lowe*, 153 Ill. 2d 195 (1992); *In re G.B.*, 88 Ill. 2d 36 (1981); *People v. Molz*, 415 Ill. 183 (1953). Probation simultaneously serves as a form of punishment and as a method for rehabilitating an offender. *In re G.B.*, 88 Ill. 2d at 44. Protection of the public from the type of conduct that led to a defendant's conviction is one of the goals of probation. *People v. Cozad*, 158 Ill. App. 3d 664 (1987).

The State argues that the warning sign in the case at bar is a reasonable condition of probation because it is consistent with the permissible conditions listed in section 5—6—3(b) and furthers the goals of probation.

Although the sign may foster the goals of probation to the extent that it punishes the defendant and protects the public, furtherance of these two goals alone does not render the condition reasonable. Indeed, we are persuaded by defendant's contention that the sign, in fact, may hamper the goal of rehabilitation, and that the erection of the sign is inconsistent with the conditions of probation listed in section 5—6—3(b). We recognize that the trial court labored arduously and sincerely to develop a sentence which would serve the needs of society and simultaneously avoid incarceration of the defendant. Nonetheless, we hold the sign condition of proba-

tion imposed in this case was unreasonable and did not serve the purposes of section 5—6—3(b).

The Tennessee Supreme Court in *State v. Burdin*, 924 S.W.2d 82 (Tenn. 1996), considered and rejected a comparable "shaming sign," finding that it was unreasonable. The Tennessee court held that the Tennessee statute at issue there did not authorize a condition of probation which required the defendant to erect a sign in the front yard of his residence which read, "Warning, all children. [Defendant] is an admitted and convicted child molester. Parents beware."

In *Burdin*, the defendant pleaded guilty to sexual battery of a 16-year-old victim. As a condition of probation, the court ordered the defendant to place the warning sign in front of his residence where he lived with his mother. The Tennessee statute, like the Illinois statute, provided a non-inclusive list of permissible probation conditions. The Tennessee statute also contained a provision which stated, in part, that the defendant may be required to satisfy "any other condition [of probation] reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty, or incompatible with the offender's freedom of conscience, or otherwise prohibited by this chapter."

The *Burdin* court stated:

"The consequences of imposing such a condition without the normal safeguards of legislative study and debate are uncertain. Posting a sign in the defendant's yard would dramatically affect persons other than the defendant and those charged with his supervision. *** [C]ompliance with the condition would have consequences in the community perhaps beneficial, perhaps detrimental, but in any event unforeseen and unpredictable." *Burdin*, 924 S.W.2d at 87.

Similarly, in *People v. Johnson*, 174 Ill. App. 3d 812 (1988), the court cautioned against allowing trial courts to impose unconventional conditions of supervision (730 ILCS 5/5—6—3.1(c) (West 1994)), which may have un-

known consequences. The defendant in *Johnson* was convicted of driving under the influence of alcohol. As a condition of supervision, the trial court in *Johnson* ordered the defendant to place an advertisement in the local daily newspaper, which contained her booking picture and an apology. The appellate court vacated this condition, finding it to be inconsistent with the overall intent of section 5—3—6.1. *Johnson*, 174 Ill. App. 3d at 815.

Specifically, the court in *Johnson* noted that none of the listed, permissible conditions suggest subjecting the defendant to ridicule. Rather, the court determined that the overall intent of section 5—6—3.1 was to aid the defendant in rehabilitation and to avoid future crimes. The court stated:

"Neither the trial court *** nor this court can determine the psychological or psychiatric effect of the publication. An adverse effect upon the defendant would certainly be inconsistent with rehabilitation and with the statutory provision allowing the court to require psychological or psychiatric treatment." *Johnson*, 174 Ill. App. 3d at 815.

We are mindful of the distinctions in the case *sub judice* and the *Burdin* and *Johnson* cases. However, we agree with the specially concurring opinion in *Johnson*, which observed:

"[T]o uphold the condition imposed here would encourage other courts to impose other unusual, dramatic conditions, and the proliferation of these types of conditions would cause problems of a greater magnitude than their propensity to rehabilitate." *Johnson*, 174 Ill. App. 3d at 817 (Green, P.J., specially concurring).

See also *People v. Harris*, 238 Ill. App. 3d 575 (1992) (banishing the defendant from the State of Illinois as a condition of probation was unreasonable because no valid purpose would be served); *People v. Letterlough*, 86 N.Y.2d 259, 655 N.E.2d 146, 631 N.Y.S.2d 105 (1995) (condition of probation requiring the defendant to affix a fluorescent sign reading "convicted dwi" to the license

plate of any vehicle he drove was not authorized); *People v. Hackler*, 13 Cal. App. 4th 1049, 16 Cal. Rptr. 2d 681 (1993) (court not authorized to require probationer to wear a T-shirt bearing bold printed statement proclaiming his felony status); but see *Lindsay v. State*, 606 So. 2d 652 (Fla. 1992) (condition of probation requiring defendant to place a newspaper advertisement showing a mug shot, name and caption "DUI-convicted" upheld under Florida statute); *Goldschmitt v. State*, 490 So. 2d 123 (Fla. 1986) (bumper sticker reading "CONVICTED D.U.I.—RESTRICTED LICENSE" upheld); *Ballenger v. State*, 210 Ga. App. 627, 436 S.E.2d 793 (1993) (court had the authority to require the defendant to wear a pink fluorescent bracelet reading "D.U.I. CONVICT").

We hold that section 5—6—3(b) of the Code did not authorize the trial court to require the sign as a condition of the defendant's probation. The sign contains a strong element of public humiliation or ridicule because it serves as a formal, public announcement of the defendant's crime. Thus, the sign is inconsistent with the conditions of probation listed in section 5—6—3(b), none of which identify public notification or humiliation as a permissible condition. Further, we determine that the sign may have unpredictable or unintended consequences which may be inconsistent with the rehabilitative purpose of probation.

Finally, the nature and location of the sign are likely to have an adverse effect on innocent individuals who may happen to reside with the defendant. At the time of sentencing in this case, the defendant's wife was living on the premises where the violent felon sign was to be displayed. The defendant's elderly mother also intended to live there. The record shows that the defendant has two adult children who visit the farm, as well as young grandchildren. We believe that the manner in which the sign affects others also renders it an impermissible condition of probation.

Conditions which label a defendant's person or property have a stigmatizing effect and are considered shaming penalties. D. Kahan, *What Do Alternative Sanctions Mean?* 63 U. Chi. L. Rev. 591 (1996); Comment, *Sentenced to Wear the Scarlet Letter: Judicial Innovations in Sentencing—Are They Constitutional?* 93 Dick. L. Rev. 759 (1989); Comment, *The Modern Day Scarlet Letter: A Critical Analysis of Modern Probation Conditions*, 1989 Duke L.J. 1357 (1989). Although a probationer may experience a certain degree of shame from a statutorily identified condition of probation, shame is not the primary purpose of the enumerated conditions.

The judicially developed condition in the case at bar does not reflect present penological policies of this state as evidenced by our Unified Code of Corrections. The authority to define and fix punishment is a matter for the legislature. *People v. Breen*, 62 Ill. 2d 323, 327 (1976). The drastic departure from traditional sentencing concepts utilized in this case is not contemplated by our Code. Therefore, we determine that the erection of the sign as a condition of probation was unreasonable, and may be counterproductive to defendant's rehabilitative potential.

For the above stated reasons, we conclude that the trial court exceeded its authority and abused its discretion under section 5—6—3(b) when it ordered the defendant to place the violent felon sign at the entrance to his farm. This condition was not reasonable. Because the sign has already been in place for more than half the period of the defendant's probation, and in order that the issue may not become moot by the further passage of time, we hereby order that the disputed condition of probation is vacated *instanter*.

The judgment of the appellate court is reversed and

the judgment of the circuit court is affirmed in part and vacated in part.

*Appellate court judgment reversed;*
*circuit court judgment affirmed in part*
*and vacated in part.*

JUSTICE MILLER, concurring in part and dissenting in part:

I agree with the majority's decision that requiring the defendant to maintain a warning sign on his property was not an appropriate condition of probation. Rather than simply leave undisturbed the remainder of the defendant's sentence, however, I would vacate the sentence and remand the cause to the circuit court for a new sentencing hearing. The trial judge sentenced the defendant in August 1995 to a 30-month term of probation. Because of the amount of time remaining in that period—nearly a year—and because we have now eliminated an important condition of that disposition, I believe that the trial judge should have the opportunity to reconsider the defendant's sentence in light of our holding here, and with regard to the defendant's conduct since the original hearing (see 730 ILCS 5/5—5—3(d) (West 1994)).

CHIEF JUSTICE HEIPLE joins in this partial concurrence and partial dissent.

JUSTICE BILANDIC, also concurring in part and dissenting in part:

I agree with the majority that the provision of the sentence requiring the erection of the sign was not reasonable. Rather than just vacating that portion of the sentence, I would vacate the entire sentence and remand to the circuit court for a new sentencing hearing consistent with the views expressed in the opinion.

CHIEF JUSTICE HEIPLE joins in this partial concurrence and partial dissent.