NOTICE
Decision filed 07/30/15. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2015 IL App (5th) 130155

NO. 5-13-0155

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Richland County. |
| | ) | |
| v. | ) | No. 12-CF-92 |
| | ) | |
| ISSAC B. CRABTREE, | ) | Honorable |
| | ) | Larry D. Dunn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    After a jury trial in the circuit court of Richland County, defendant, Issac B. Crabtree, was convicted of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2010)) in that defendant, who was 17 years or older, placed his hand on the body near the vagina of R.F., the victim, who was under 13 years of age. Defendant was sentenced to 180 days in the county jail and a term of 48 months' probation. As conditions of his probation, defendant was ordered *inter alia* to (1) refrain from communicating with or contacting via the Internet any person he reasonably believes is under 18 years of age and not related to him, (2) refrain from accessing or

1

using a social networking website, and (3) not use any computer "scrub" software on a computer that he uses. The issue raised in this appeal is whether the three conditions of defendant's probation which restrict his use of computers are proper in light of the fact that a computer was not used in the commission of the underlying offense. We affirm.

¶ 2                                                    FACTS

¶ 3     On March 11, 2012, defendant, age 22, was charged with aggravated criminal sexual abuse after the victim (date of birth September 12, 2001) told her fourth-grade teacher that defendant inappropriately touched her. Defendant was a friend of the victim's family and previously lived with the family for over a year, oftentimes babysitting for the victim and her younger sister. At the time of the alleged offense, however, defendant had moved out of the home after the victim's mother and stepfather had another baby and their house became too small.

¶ 4     On the day of the alleged incident, the victim's family held a cookout, and there were several guests, including defendant. Because defendant did not have a ride home, the victim's family invited him to spend the night on the couch and the victim's mother offered to drop him off at his home the next morning on her way to work. Several witnesses testified that it was common for defendant to spend the night.

¶ 5     The victim testified she shared a room with her younger sister and was asleep on her mattress in their bedroom when she woke up after hearing her blanket rustle. She felt a hand moving inside her underwear by her vagina. She said she "squinted" her eyes and saw defendant on his knee by her bed. She was frightened and was not sure what to do.

2

Ultimately, she lurched up, causing defendant to jump up and twirl one way and then another and jump out of her room. The following morning she woke up to go to school and defendant was asleep on the couch. Defendant woke up and made a hand gesture toward her in which he pointed his index finger at her and moved his thumb and said, "Bang."

¶ 6    The victim testified she gave defendant a "mean" look and stomped her foot. The victim then went to school. The victim testified she was scared and did not tell her mother or stepfather what happened during the night. At school, she asked to talk privately with her teacher and told her teacher defendant touched her inappropriately. The teacher took the victim to the school nurse. The authorities were notified, and a police officer interviewed the victim at the Child Advocacy Center. The interview was recorded on a DVD and played for the jury.

¶ 7    The victim's mother and stepfather testified. The victim's stepfather, who admitted he was previously convicted of aggravated robbery, testified that several weeks before the incident in question defendant babysat the children while he and his wife went out for drinks. After coming home, the stepfather passed out on the couch. At some point, he woke up and saw defendant walking down the hallway into the victim's room. Ultimately, he found defendant standing near his younger daughter's bed. Defendant explained that the daughter dropped her blanket and he was covering her.

¶ 8    The victim's mother testified she did not notice anything unusual about the victim's behavior the morning after the cookout. She testified she was not feeling well

3

and called in sick to work. Her husband took her to the clinic to see a doctor and they dropped defendant off at his home on their way back from the clinic.

¶ 9 After learning about the victim's allegations, defendant agreed to be interviewed by the police. The interview was recorded on a DVD and played for the jury. During the interview, defendant denied inappropriately touching the victim. At trial, defendant testified in his own defense. He again denied touching the victim. He admitted he was in the victim's room on the night in question, but explained he was looking for the victim's sister, who was not in her bed.

¶ 10 After hearing all the evidence, the jury convicted defendant of the offense. The trial court sentenced defendant to 180 days in jail and 48 months' probation. The trial court also ordered defendant to comply with numerous conditions contained on a preprinted form titled "Supplemental Order of Conditions of Probation for Sex Offenses," including the following three conditions:

> "4. **COMMUNICATING BY INTERNET**. If convicted of an offense committed on or after June 1, 2008[,] that would qualify defendant as a child sex offender as defined in Section 11-9.3 or 11-9.4 of the Criminal Code of 1961, you shall refrain from communicating with or contacting, by means of the Internet, a person who is not related to you and whom you reasonably believe to be under 18 years of age; for purposes of this paragraph, 'Internet' has the meaning ascribed to it in Section 16J-5 of the Criminal Code of 1961; and a person is not related to you if the person is not: (i) your spouse, brother, or sister; (ii) a descendent of yours;

4

(iii) a first or second cousin; or (iv) your step-child or adopted child;

***

6. **SOCIAL NETWORKING WEBSITES PROHIBITED**. If convicted of a sex offense as defined in the Sex Offender Registration Act [730 ILCS 150/1 *et seq*.] committed on or after January 1, 2010, you shall refrain from accessing or using a social networking website as defined in Section 16D-2 of the Criminal Code of 1961 [720 ILCS 5/16D-2]; [720 ILCS 5/16D-2 was repealed by Pub. Act 96-1551, art. 5, § 5-6 (eff. July 1, 2011). Social networking website is now defined by section 17-0.5 of the Criminal Code of 2012. 720 ILCS 5/17-0.5 (West 2012).]

***

8. **SCRUB SOFTWARE PROHIBITED**. If convicted of a sex offense as defined in Section 2 of the Sex Offender Registration Act committed on or after January 1, 2010, that requires the person to register as a sex offender under that Act, the defendant may not knowingly use any computer scrub software on any computer that the sex offender uses."

In this direct appeal, defendant does not challenge his conviction, but objects to the above three conditions of probation.

¶ 11                                        ANALYSIS

¶ 12    The issue on appeal is whether the three conditions of defendant's probation restricting his use of computers are proper in light of the fact that a computer was not used in the commission of the underlying offense. Defendant contends the conditions are

5

not mandatory, and, even if they are, the statute is unconstitutional as applied to him. Defendant insists the conditions are overly broad because he did not use a computer to commit the offense and, therefore, the trial court abused its discretion in imposing them. After careful consideration, we agree with the State that the conditions of probation are mandatory, and, further, they are not unconstitutional as applied to defendant.

¶ 13    Section 5-6-3(a) of the Unified Code of Corrections (Code) specifically provides for the three conditions of probation now in question as follows:

"(a) The conditions of probation and of conditional discharge *shall* be that the person:

* * *

(8.7) if convicted for an offense committed on or after June 1, 2008 (the effective date of Public Act 95-464) that would qualify the accused as a child sex offender as defined in Section 11-9.3 or 11-9.4 of the Criminal Code of 1961 or the Criminal Code of 2012, refrain from communicating with or contacting, by means of the Internet, a person who is not related to the accused and whom the accused reasonably believes to be under 18 years of age; ***

***

(8.9) if convicted of a sex offense as defined in the Sex Offender Registration Act committed on or after January 1, 2010 (the effective date of Public Act 96-262), refrain from accessing or using a social networking website as defined in Section 17-0.5 of the Criminal Code of 2012;

6

(11) if convicted of a sex offense as defined in Section 2 of the Sex Offender Registration Act committed on or after January 1, 2010 (the effective date of Public Act 96-362) that requires the person to register as a sex offender under that Act, may not knowingly use any computer scrub software on any computer that the sex offender uses[.]"  (Emphasis added.)

730 ILCS 5/5-6-3(a)(8.7), (8.9), (11) (West 2012).

We point out that subsection (a) specifically describes probationary conditions that "shall" be imposed.

¶ 14    The primary rule of statutory interpretation is to determine legislative intent, the best indicator of which is the statutory language, which should be given its plain and ordinary meaning. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11, 958 N.E.2d 1021.  In general, use of the word "shall" indicates that the legislature intended to impose a mandatory obligation. *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 16, 999 N.E.2d 331.  Subsection (b) of the statute specifically describes probationary conditions "[t]he Court *may* in addition to other reasonable conditions" order.  (Emphasis added.)   730 ILCS 5/5-6-3(b) (West 2012).  Legislative use of the word "may" is generally recognized as indicating a permissive or directory reading.  When the legislature uses both "may" and "shall" in the same statute, we may infer that the legislature knew the difference and intended each word to carry its ordinary meaning. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 41 n.2, 16 N.E.3d 801.

¶ 15   Here, the three conditions complained of by defendant are specifically enumerated in subsection (a), which uses the word "shall," indicating the probationary conditions contained therein are mandatory.  The issue now becomes whether the conditions are unconstitutional as applied to defendant.  After careful consideration, we believe the conditions are reasonable and the value to the public in imposing the restrictions outweighs any impairment to defendant's constitutional rights.

¶ 16   Probation serves as a form of punishment and as a method for rehabilitating the offender.  *People v. Meyer*, 176 Ill. 2d 372, 379, 680 N.E.2d 315, 318 (1997).  A condition of probation is permissible so long as there is some connection between the condition and the underlying offense.  *People v. Whittington*, 87 Ill. App. 3d 504, 506, 409 N.E.2d 150, 151 (1980).  In evaluating whether a probationer's rights should be restricted, courts determine whether (1) the condition of probation reasonably relates to the intended purpose of fostering rehabilitation, (2) the value to the public in imposing the condition manifestly outweighs any impairment of the probationer's constitutional rights, and (3) there are any alternative means less subversive to the probationer's constitutional rights that would still comport with the purposes of the legislation conferring the benefit of probation.  *In re J.G.*, 295 Ill. App. 3d 840, 843, 692 N.E.2d 1226, 1228-29 (1998).

¶ 17   Defendant fails to identify and we fail to find any protected constitutional right of a person to use a computer, the Internet, or a social networking website.  In support of removing the conditions, defendant cites several federal cases, including *United States v. Baker*, 755 F.3d 515 (7th Cir. 2014), and *United States v. Goodwin*, 717 F.3d 511 (7th

8

Cir. 2013). All are distinguishable because they deal with discretionary conditions imposed upon supervised release rather than mandatory conditions of probation imposed here pursuant to section 5-6-3(a) of the Code. In the instant case, although defendant's crime did not include use of a computer or a social networking website, it involved the sexual abuse of a young girl. Thus, the conditions of probation appear reasonably related to the goals of deterrence, protection of the public, and rehabilitation of defendant.

¶ 18 The first two probationary restrictions complained of essentially bar defendant from making contact with an unrelated child through the use of a computer, while the third bars defendant from using "scrub software" which could be used to destroy computer evidence of violating the first two conditions. A review of the three conditions shows they are limited and do not completely bar defendant from using a computer. For example, defendant can still apply for jobs via the Internet or do general searches. What he cannot do is contact anyone unrelated to him and under the age of 18, nor can he access social networking sites often used by minors. Given the nature of the offense of which defendant was convicted, we do not believe these mandatory conditions are unreasonable.

¶ 19 For the foregoing reasons, we hereby affirm the judgment of the circuit court of Richland County.

¶ 20 Affirmed.

9

2015 IL App (5th) 130155

NO. 5-13-0155

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

THE PEOPLE OF THE STATE OF ILLINOIS,  ) Appeal from the
                                       ) Circuit Court of
    Plaintiff-Appellee,            ) Richland County.
                                       )
v.                                     ) No. 12-CF-92
                                       )
ISSAC B. CRABTREE,                     ) Honorable
                                       ) Larry D. Dunn,
    Defendant-Appellant.           ) Judge, presiding.
_____

**Opinion Filed:**        July 30, 2015
_____

**Justices:**        Honorable Richard P. Goldenhersh, J.

                       Honorable Judy L. Cates, P.J., and
                       Honorable Melissa A. Chapman, J.,
                       Concur
_____

**Attorneys**      Michael J. Pelletier, State Appellate Defender, Jacqueline L. Bullard,
**for**             Deputy Defender, Allen H. Andrews, Assistant Appellate Defender,
**Appellant**     Office of the State Appellate Defender, Fourth Judicial District, 400
                 West Monroe Street, Suite 303, P.O. Box 5240, Springfield, IL
                 62705-5240
_____

**Attorneys**      Hon. David Hyde, State's Attorney, Richland County Courthouse,
**for**             103 West Main, Olney, IL 62450, Patrick Delfino, Director, Stephen
**Appellee**      E. Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office
                 Of the State's Attorneys Appellate Prosecutor, Fifth District Office,
                 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL
                 62864
_____