**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200233-U

Order filed October 18, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0233 Circuit No. 17-CF-782 |
| | ) | |
| TIFFINI E. KIMBER, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant does not have standing to challenge the constitutionality of the Firearm Concealed Carry Act; and it was plain error for the circuit court to order medical treatment as a condition of defendant's probation.

¶ 2     Defendant, Tiffini E. Kimber, appeals her aggravated unlawful use of a weapon (AUUW) conviction arguing that the Firearm Concealed Carry Act (Act) (430 ILCS 66/1 *et seq.* (West 2016)) is unconstitutional as applied to her. Defendant also argues the Peoria County circuit court abused its discretion in ordering her to undergo medical, psychiatric, and substance abuse

treatment as conditions of her probation. We affirm in part, reverse in part, and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by superseding indictment with AUUW (720 ILCS 5/24-1.6(a)(1) (West 2016)). The charge alleged: "that she knowingly carried an unloaded, uncased handgun with the gun and ammunition immediately accessible to her in a motor vehicle while located upon a public street *** in Peoria, Illinois and [she] had not been issued a currently valid license under the *** Act."

¶ 5        Defendant filed a motion to declare the AUUW statute unconstitutional. Defendant alleged that she was unlawfully deprived of her right to carry a firearm under both the Illinois and United States Constitutions. Defendant filed an amended motion wherein she argued the costs associated with procuring a concealed carry license under the Act unlawfully hindered her right to carry a firearm openly in self-defense. The court denied defendant's motion following a hearing.

¶ 6        Defendant's case proceeded to a stipulated bench trial. Upon review of the evidence, the court found defendant guilty of AUUW.

¶ 7        According to the presentence investigation report (PSI), defendant was previously convicted of unlawful possession of a controlled substance with intent to deliver and unlawful possession of a controlled substance. Defendant described her neighborhood as "not great," referencing moderate criminal activity and the availability of drugs. Defendant reported first using cannabis at the age of 18, smoking two "joints" daily. Defendant discontinued use approximately five years prior to being sentenced in this case. Defendant started consuming alcohol at the age of 19. Defendant reported her current alcohol consumption consisted of one

2

beer and one glass of wine on the weekend. Defendant reported that she did not use any other illicit substances.

¶ 8    The PSI stated that defendant suffered from fibroids on her uterus which "may require a partial hysterectomy in the future." Defendant reported she was prescribed muscle relaxers for this condition. She also reported that her mental health was good. The PSI stated that based on an adult risk assessment and other pertinent factors, defendant's risk level to reoffend was moderate. The PSI identified "[d]efendant's anti-social beliefs toward her criminal behavior" as a risk factor. The PSI recommended cognitive behavioral therapy.

¶ 9    At defendant's sentencing hearing, the State did not present any evidence in aggravation. Defendant did not present any evidence in mitigation. Defendant stated:

"Nobody knew where [my firearm] was except for me, because again, it's mine. I had my FOID card with me. I did not know anything about not having it outside of my home. I've had it since I've been 20 years old, and I've taken it a lot of places with me besides the shooting range and things like that.

But I live in a very bad neighborhood, the South End of Peoria. I've lived there all my life. I've had break-ins. I've had people approach me. I've had people approach my car. Basically, I'm traumatized and scared for my life, like, literally, and my kids. There's a lot of things that has happened to me previously in my life from the guys I've been with to just from where I live. So that is the reason why I had my weapon on me.

But I have a nursing license. I have a phlebotomy license. I've been in school. I want to go back to school, and I want to raise my kids to do better if we have to end up living in Peoria, which everybody knows it's not a good place. But

3

I just feel like I know I shouldn't have done what I did. I'm an adult. I know

better, but that time I was drinking. I wasn't in my right mind."

The court stated:

"I've considered the [PSI], the arguments of the attorneys, the statement of

[defendant]. I've considered the statutory factors in aggravation and mitigation,

the history and character of the defendant, having due regard for the nature and

circumstances of the offense.

\* \* \*

The PSI indicates that the defendant is a moderate risk. Her employment

status is outstanding, responsibility otherwise is outstanding. Her longtime

boyfriend is a stable influence."

The court sentenced defendant to 24 months' probation. Additionally, the probation order

required defendant to undergo medical, psychiatric, and substance abuse treatment. Defendant

did not file a motion to reconsider sentence. Defendant appeals.

¶ 10                                    II. ANALYSIS

¶ 11                           A. Firearm Concealed Carry Act

¶ 12          Defendant raises an as-applied constitutional challenge to the Act (430 ILCS 66/1 *et seq.*

(West 2016)). Defendant argues the Act violates the second amendment to the United States

Constitution and article I, section 22 of the Illinois Constitution because it infringes on her

fundamental right to bear arms outside of the home. The Act specifically allows a license holder

to "keep or carry a loaded or unloaded concealed firearm on or about his or her person within a

vehicle." *Id.* § 10(c)(2). Defendant argues that she is unable to afford the training and fees

associated with obtaining a concealed carry license. She contends because she cannot afford the

license, she is now subject to weapons charges like AUUW, when she otherwise would not be as a license holder. The State argues that there is no evidence defendant ever actually applied for a concealed carry license and was rejected. Therefore, defendant lacks standing to challenge the constitutionality of the statute as applied to her.

¶ 13        Generally, all statutes are presumed constitutional. *People v. Aguilar*, 2013 IL 112116, ¶ 15. To overcome this strong presumption, a party challenging the statute must clearly establish a constitutional violation. *People v. Guevara*, 216 Ill. 2d 533, 543 (2005). "A party has standing to challenge the constitutionality of a statute only insofar as it adversely impacts his or her own rights." *People v. Funches*, 212 Ill. 2d 334, 346 (2004). If no constitutional defect is found in the application of the statute to defendant, she does not have standing to argue it before this court. See *id.* "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36. We review *de novo* a challenge to the constitutionality of a statute. *Aguilar*, 2013 IL 112116, ¶ 15.

¶ 14        To establish standing to challenge the constitutionality of a statute, defendant must "submit to the challenged policy." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (1997). In other words, defendant must have attempted to comply with the Act. The failure to apply for the concealed carry license would not preclude defendant from challenging the statute if she made a substantial showing that an application would be futile. See *id.* However, defendant does not provide any evidence that she attempted to apply for the license and was subsequently denied, in fact, defendant admits that she was not aware she needed an additional license. *Supra* ¶ 9. Additionally, defendant has not provided evidence to prove that she does not have means to

obtain the license if she wished to pursue applying for it. Thus, defendant does not have standing to challenge the constitutionality of the Act.

¶ 15                                     B. Conditions of Probation

¶ 16        Defendant argues the circuit court abused its discretion in ordering her to undergo medical, psychiatric, and substance abuse treatment as conditions of her probation when she was not convicted of a drug offense and no evidence was presented that she required such treatment. Defendant concedes that she did not preserve this argument for appellate review. Accordingly, we review defendant's claim under the plain error doctrine. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 17        "The plain-error doctrine is a narrow and limited exception" to forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The first step is to determine whether a clear or obvious error occurred. *Piatkowski*, 255 Ill. 2d at 565.

¶ 18        "The [circuit] court is afforded wide discretion in fashioning the conditions of probation for a particular defendant." *People v. Meyer*, 176 Ill. 2d 372, 378 (1997). However, this is not without limitation. *Id.* The court may require defendant undergo medical, psychological, or psychiatric treatment, or treatment for drug addiction or alcoholism, if reasonably related to the nature of the offense or rehabilitation of defendant. 730 ILCS 5/5-6-3(b)(4) (West 2016).

¶ 19        Regarding defendant's health, she reported she suffered from fibroids on her uterus which she was treating with muscle relaxers. Defendant noted that this condition "may require a partial hysterectomy in the future." Without any discussion of whether this condition was related to her offense or rehabilitation, the court determined that defendant should undergo medical treatment as a condition of her probation. In effect, the court's order for medical treatment could require defendant to undergo a partial hysterectomy as a condition of probation. See *Seymour v.*

6

*Collins*, 2015 IL 118432, ¶ 41 (an abuse of discretion occurs when no reasonable person would take the view adopted by the circuit court). As this procedure or any treatment for defendant's condition was wholly unrelated to the offense or her rehabilitation, the court abused its discretion in ordering defendant to undergo medical treatment as a condition of her probation. Accordingly, the court clearly erred.

¶ 20 Following the finding of a clear or obvious error, "[i]n the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. Here, the evidence did not strongly weigh against defendant. See *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Rather, the only evidence that defendant may reasonably benefit from medical care was her own statement in the PSI that she "may require a partial hysterectomy in the future." This statement is not dispositive. In fact, "may" expresses a possibility, and "in the future" indicates a lack of urgency. Additionally, defendant was already treating her condition. Defendant has met her burden under the first prong of the plain error doctrine. See *Hillier*, 237 Ill. 2d at 545.

¶ 21 We reverse defendant's sentence and remand for a new sentencing hearing. On remand, we instruct the court to ensure that the ordered conditions of defendant's probation relate to the offense or her rehabilitation.

¶ 22                                III. CONCLUSION

¶ 23 The judgment of the circuit court of Peoria County is affirmed in part, reversed in part, and remanded with directions.

¶ 24 Affirmed in part, reversed in part, and remanded with directions.